## M'Clure *against* Foreman.

The pending application of an insolvent debtor to be discharged, relieves him from the necessity of making a second application, in pursuance of a bond given to another creditor upon a subsequent arrest.

ERROR to the District Court of *Allegheny* county.

John M'Clure, Jun., against George D. Foreman and J. K. Morehead. This was an action of debt upon an insolvent bond. The declaration set out the bond dated 21st of November 1840, penalty $2000, with this condition: "Whereas, said Foreman was arrested on a *ca. sa.* No. 241, January term 1841, in which M'Clure was plaintiff, and said Foreman defendant, for $937.65 debt, besides costs, with condition, that if the said George shall appear *at the next term of the Court* of Common Pleas of Allegheny county, and then and there present his petition for the benefit of the insolvent laws of this Commonwealth, and comply with all the requisites of the said laws, and abide all orders of said court in that behalf, or in default thereof, and if he fail in obtaining his discharge as an insolvent debtor, shall surrender himself to the jail of said county;" and alleged as a breach, "that said George did not appear at the next Court of Common Pleas of said county, and then and there present his petition," &c.

The defendant pleaded that he did appear at the next term of said court, and did then and there present his petition for the benefit of the insolvent laws.

Before the date of the bond, the defendant had been arrested by another creditor, and on the 26th of October 1840, at an adjourned court, he had presented his petition for the benefit of the insolvent laws, and the court appointed the first day of the next term, which was the 23d of December, for his hearing. On that day the proceeding was continued until March 1841; then again until June; then again until October; and then again until November, when he was finally discharged.

GRIER, President, was of opinion that the petition filed at the December term 1840, and the subsequent proceedings upon it, supported the letter as well as the spirit of the defendant's plea, and directed a verdict accordingly.

*Dunlop,* for plaintiff in error, argued that a party was bound to comply with his legal contract unless it was impossible to perform it. There was nothing in the way of his performance, and he never does a single act after the giving of his bond to comply with

its condition. What he had done before was clearly no compliance with his contract that he would do it again. He must comply as far as the law admits of. 7 *Watts* 381; 4 *Watts* 70; 6 *Watts* 508; 9 *Watts* 289; 1 *Lev.* 191; 6 *Term Rep.* 710; 3 *Am. Com. Law* 213, 220; 2 *Bos. & Pul.* 346; *Ld. Ray.* 1164; 10 *Johns.* 27; 7 *Mass.* 338; 1 *Pick.* 287; *Fonb. Eq.* 222.

*M'Graw, contra.* The object of a proceeding against a defendant to compel him to take the benefit of the insolvent law is to procure an assignment of his property; and the law does not require so vain a thing as that the petitioner shall make more applications than one. In fact, the court would not receive a petition while there was one pending. By appearing and prosecuting his application he did comply with his obligation to the present plaintiff 14 *Serg. & Rawle* 173; 1 *Watts & Serg.* 379; 2 *Miles's Rep.* 437.

The opinion of the Court was delivered by

GIBSON, C. J.—The condition of a common law bond which embodies the meaning of parties who pick their words and contract at will, is to be more strictly construed than the condition of a bond prescribed by a statute to fit the form of a coming event which was dimly foreseen. The bond before us is in the words of a remedial statute, and is to be as liberally construed in advancement of the remedy, as if it were a part of the statute itself. Without a judicial adjustment of the parts to the movement of the whole, a proceeding, such as this, could be seldom carried through; for the machinery of the law, like every other new construction, has usually been found imperfect at the first trial of it. It is said that Arkwright, the celebrated inventor of the spinning-jenny, could not make it work till a common maker of spinning-wheels pointed out its want of fliers: they were added to the spindles, and the machine was perfect. And so it must necessarily be with positive law, over which what has been contemptuously called judge-made law, has this decisive advantage that its parts are prepared piecemeal, being fitted and added in succession according to the wants of particular cases, and thus proved by experiment before they are incorporated with the whole; while, on the other hand, a statute or a code is struck out at a heat. The code-maker produces an arbitrary rule for a case he knows not of; which exists only in his mind's eye; and which never happens in exact conformity to his preconception of its shape and dimensions: the judge develops a pre-existent principle of the immutable laws of right and wrong, capable of infinite extension and adaptation to every complication of circumstances. What then? God forbid that we should not have acts of legislation by the constitutional organ whose power alone is competent to make those changes or alterations which the laws require; for it would be just as pernicious to clothe the judiciary with arbitrary discretion, as it would

[M'Clure v. Foreman.]

be impracticable to confine the streams of justice to the limits of a code, or make them flow the more freely for being icebound. All that can be desired, is that the courts be allowed to adjust the parts by loosening a pivot in one place or tightening a screw in another, to make the whole work according to the design of the legislature; as we propose to do in respect to the proceeding of which this bond is a part.

He by whom its form was conceived, had in view a single arrest followed by an isolated proceeding, consisting of its own bond, petition, hearing, and discharge or re-commitment; and the occurrence of a subsequent arrest before the debtor's person could be entirely exempted, seems not to have been contemplated, else repeated petitions and discharges would not have been prescribed to save the penalties of successive bonds, when a single one would have answered every purpose except to release the sureties, if that were necessary, from a useless continuance of their responsibility. Yet the letter of the condition would require the operation to be repeated *toties quoties.* What then is to be done? On the one hand is the letter of the condition requiring the debtor to appear at the next term, present his petition, and be discharged or surrendered, independently of any prior discharge or pending proceeding: and on the other, is the inutility of exacting a repetition of the ceremony, when he has been discharged already. No court would perform it: for, like a repetition of the marriage ceremony, it would be simply void. By dispensing with literal performance when the debtor has been finally discharged on a petition pending at the date of the bond we obtain the required result—security for the forthcoming of the person in the event of its remaining liable to execution. We would hold a discharge of it at an adjourned court between the arrest and the time of appearance, to be equivalent to performance, on the ground that an actual discharge had become impossible by the act of the law. In this case the debtor was discharged, not even on a previous proceeding, but on a petition filed in pursuance of the very bond, though strictly before the time. It was exhibited at an intermediate court held by adjournment from the preceding term; but continued from time to time till the debtor was discharged. That it was erroneous, but not void, is indisputable; and the plea was amply sustained by the record.

Judgment affirmed.